# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DENIS K. ROTROFF,

Plaintiff,

v.

PAM AHLIN, et al.,

Defendants.

_______________________________/

1:09-cv-02021-AWI-GSA-PC

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED, WITH PREJUDICE, FOR PLAINTIFF'S FAILURE TO STATE A CLAIM
(Doc. 24.)

OBJECTIONS, IF ANY, DUE IN THIRTY DAYS

Plaintiff Denis K. Rotroff ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action.[1] This action proceeds on Plaintiff's complaint, filed November 17, 2009, against defendants Stephen Mayberg and Pam Ahlin, and John Does 1-20, for denial of freedom of expression under the First Amendment, violation of the Takings Clause under the Fifth Amendment, violation of Due Process under the Fourteenth Amendment, and breach of contract, stemming from the passage of a regulation which Plaintiff alleges will result in the nearly immediate confiscation of his laptop computer. (Doc. 1.)

---

[1] Individuals detained pursuant to California Welfare and Institutions Code § 6600 et seq. are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff filed the complaint initiating this action on November 17, 2009, along with an emergency motion for preliminary injunction to enjoin the defendants from confiscating his laptop computer. (Docs. 1, 3.) On December 3, 2009, the Court directed the United States Marshal to serve process upon defendants Pam Ahlin and Stephen Mayberg ("Defendants"). (Doc. 8.) On December 7, 2009, and March 9, 2010, Plaintiff filed a second and third motion for preliminary injunctive relief. (Docs. 10, 17.)

On April 16, 2010, Defendants filed a motion to dismiss the complaint under Rule 12(b)(6). (Doc. 24.) On May 25, 2010, Plaintiff filed an opposition. (Doc. 32.) Defendants did not file a reply to the opposition, and the motion has been deemed submitted. L.R. 230(l). Defendants' motion to dismiss is now before the Court.

## II. SUMMARY OF THE COMPLAINT

Plaintiff is currently a civil detainee at Coalinga State Hospital ("CSH"), where the events at issue allegedly occurred. Plaintiff names Pam Ahlin (CSH Executive Director), Stephen Mayberg (Director of California Department of Mental Health ("DMH")), and John Does 1-20 as defendants.

Plaintiff alleges as follows. On July 28, 2006, the administration at CSH adopted Administrative Directive #654 ("AD-654"), which allowed CSH patients to purchase and own personal laptop computers, subject to certain rules to be followed by patients. AD-654 expressly stated that rules violations would be dealt with on an individual basis. Plaintiff purchased a laptop computer pursuant to AD-654. In November 2006, an amendment was made to AD-654 which changed the language of the directive to state that ownership of a laptop computer was "a privilege."

On October 6, 2009, during a settlement conference for Plaintiff's prior case,[2] the DMH's Legal Affairs attorney declared that "it is just too much trouble for the patients to own such devices." The attorney confirmed it is the DMH's intention to confiscate all patient-owned computers, Sony PSP playstations, and palm pilots. On October 26, 2009, the DMH adopted an emergency regulation

[2]The Court takes judicial notice of Plaintiff's prior civil rights action at this Court, case 1:06-cv-1419-LJO-DLB-PC, Rotroff v. Robinson, concerning allegations that Plaintiff's laptop computer was impounded by officials at CSH without due process. The case was settled on October 6, 2009, at a settlement conference before Magistrate Judge Dennis L. Beck. (See Court Docket, Doc. 57.)

which declares as "contraband" all electronic devices with the capability to connect to the internet, and will result in the nearly immediate confiscation of Plaintiff's laptop computer and peripheral hardware and software. The regulation, Title 9 of the California Code of Regulations, section 4350, provides:

> Section 4350. Contraband Electronic Devices With Communication and Internet Capabilities. Electronic devices with the capability to connect to a wired (for example, Ethernet, POTS, Fiber Optic) and/or wireless (for example, Bluetooth, Cellular, Wi-Fi [802.11a/b/g/n], WIMAX) communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication. The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change. Some examples of the prohibited devices include desktop computers, *laptop computers*, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators and radios (satellite, shortwave, CB and GPS).

9 CCR § 4350 (emphasis added). No notice or hearing was afforded the Plaintiff or any of the other patients at CSH. Plaintiff contends there was no "emergency," and that patients at CSH have had laptop computers for over three years without mishap or injury to the public. Plaintiff contends that he and the other patients should have been notified and given the opportunity to oppose the emergency regulation at a hearing.

Plaintiff requests monetary damages and declaratory and injunctive relief.

## III. RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted). Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

///

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949, 1950 (citing Twombly, 550 U.S. at 556, 570) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. 556).

**A. DEFENDANTS' MOTION**

Defendants argue that the complaint should be dismissed based on Plaintiff's failure to state a claim for which relief may be granted under 42 U.S.C. § 1983.

**1. Article III Standing**

Defendants argue that Plaintiff lacks standing to bring this action. "Federal jurisdiction is limited to 'actual cases and controversies.' " Stormans, Inc. v. Selecky, 586 F.3d 1109, 1119 (9th Cir. 2009) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)). "Article III standing is a controlling element in the definition of a case or controversy." Stormans Inc., 586 F.3d at 1119 (quoting Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 848 (9th Cir. 2007) (alteration and internal quotation marks omitted)). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Stormans, Inc., 586 F.3d at 1119; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81(2000) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61(1992)). "A plaintiff must satisfy the injury-in-fact requirement by alleging that he 'has suffered some threatened or actual injury resulting from the putatively illegal action.'" Scott v. Pasadena Unified School District, 306 F.3d 646, 656 (9th Cir. 2002) (quoting O'Shea v. Littleton, 414 U.S. 488, 493 (1974)).

"The mere existence of a statute ... is not sufficient to create a case or controversy within the meaning of Article III." Stoianoff v. Montana, 695 F.2d 1214, 1223 (9th Cir. 1983). Rather, there must be a "genuine threat of imminent prosecution." Id. "A plaintiff may allege a future injury in order to comply with this requirement, but only if he or she 'is *immediately* in danger of sustaining some *direct* injury as a result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical.'" Scott, 306 F.3d at 656 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted).

The court must consider the facts as they existed at the time that the complaint was filed. Scott, 306 F.3d at 655; Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001); see also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); accord Lujan, 504 U.S. at 570 n. 4.

Defendants argue that Plaintiff lacks standing to contest the regulation at issue because he has not shown that the threatened future injury, confiscation of his laptop computer, is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

In opposition, Plaintiff argues that it is clear from the DMH's behavior that Defendants are committed to the immediate confiscation and impounding of Plaintiff's laptop computer and other devices. Plaintiff asserts that the DMH has widely distributed numerous memoranda and a statement of finding of an emergency. Following the passage of the regulation, DMH issued a timetable for collection of inventory, made detailed lists of what each patient owns, and provided notice to each patient that property identified as contraband will be confiscated and the patient will be required to donate it or send it to someone outside of the institution. Plaintiff also alleges that attorneys for the DMH stated that the DMH intends to confiscate Plaintiff's laptop computer because it causes too much trouble when patients at CSH have computers.

The Court must consider the facts as they existed at the time the complaint was filed on November 17, 2009. Taking Plaintiff's allegations in the complaint as true, Plaintiff has not established an injury in fact. The mere passage of the emergency regulation is insufficient to confer standing to bring the present action. The emergency regulation was adopted on October 26, 2009,

less than a month before Plaintiff filed the present action. During that time, no action was taken to enforce the regulation at issue. DMH's distribution of a memorandum and a statement of finding of emergency before the regulation was passed does not demonstrate that Plaintiff was immediately in danger of direct injury through enforcement of the regulation. The expectation that Plaintiff may lose possession of his computer sometime in the future, without more, does not rise to the level of an injury in fact. Therefore, Plaintiff lacks standing to bring this action.

**2. Ripeness**

Defendants also argue that Plaintiff's claims are not ripe for adjudication. The ripeness doctrine prevents premature adjudication. Stormans Inc., 586 F.3d at 1122; Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000). It is aimed at cases that do not yet have a concrete impact upon the parties arising from a dispute, in an analysis similar to the injury in fact inquiry under the standing doctrine. Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 580 (1985); Exxon Corp. V. Heinze, 32 F.3d 1399, 1404 (9th Cir. 1994). "[A]n unripe claim is not justiciable." Association of American Med. Colleges v. United States, 217 F.3d 770, 784, fn. 9 (9th Cir. 2000).

"[W]hen a litigant brings a preenforcement challenge, ... 'a generalized threat of prosecution' will not satisfy the ripeness requirement." Stormans Inc., 589 F.3d at 1122 (quoting Thomas, 220 F.3d at 1139). "Rather, there must be a genuine threat of imminent prosecution." Id. (internal quotation marks omitted). "There are three factors we consider when analyzing the genuineness of a threat of prosecution: 'whether the plaintiffs have articulated a "concrete plan" to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged [law].'" Id.

Defendants argue that Plaintiff's claims are not ripe for adjudication because the emergency regulation, while passed, has not been fully implemented.

Plaintiff argues that his claims are ripe because this is not an "abstract disagreement" but rather a "concrete" issue regarding property that Defendants want to take away. Plaintiff argues that a genuine threat of imminent prosecution is clear by Defendants' behavior. Plaintiff points to

measures taken by the DMH, including the distribution of memoranda and a statement of finding of emergency before the regulation was passed, and issuance of a timetable for collection of inventory and notification to each patient that property will be confiscated and patients will be required to either donate it or send it to someone outside of the institution. Plaintiff also claims that several DMH staff attorneys stated in federal court that it was indeed the intent of the DMH to confiscate Plaintiff's computer, PSP gaming device, and any device which possesses a USB port. Plaintiff also argues that the regulation has been implemented, because Defendants have stated that §4350 has the "force and effect of law."

Again, the Court must consider the facts as they existed at the time the complaint was filed on November 17, 2009. Plaintiff's laptop computer, which he owned and possessed before the regulation was passed, was designated as "contraband" by the regulation. Plaintiff's present possession of contraband makes enforcement more of a threat than if he merely *planned* to violate the law. However, Defendants had not given a specific warning or threat to initiate proceedings at the time the complaint was filed. The DMH had only issued a statement of finding of emergency, distributed a memorandum, and passed the regulation. A plan of implementation had not been announced, and the regulation had not been enforced. Plaintiff asserts that a timetable was issued, and patients were notified that their contraband will be confiscated. However, these events occurred *after* Plaintiff filed the complaint. Therefore, even assuming that the result of the regulation and its implementation is one that will directly affect Plaintiff, there was not a genuine threat of imminent prosecution against Plaintiff at the time the complaint was filed, and this lawsuit is not ripe for adjudication.

**3. <u>Official Capacity</u>**

Defendants argue that Plaintiff's claims for damages against Defendants in their official capacity should be dismissed as barred by the Eleventh Amendment.

Plaintiff argues that according to the § 1983 civil rights complaint form, he was offered the choice to check the box for "individual" capacity, "official" capacity, or both, allowing the court to determine which capacity is appropriate.

///

It is true that the Eleventh Amendment bars damages actions against state officials in their official capacity. See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 30 (1991); Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.), cert. denied, 118 S. Ct. 168 (1997); Pena, 976 F.2d at 472. "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law. See Kentucky v. Graham, 473 U.S. 159, 165 (1988). Where plaintiff is seeking damages against a state official, such as in the instant action, this "necessarily implies" a personal-capacity suit because an official-capacity suit would be barred. See Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

Plaintiff brings this action for damages and injunctive relief against Defendants in both their individual and official capacities. Defendants are employees of the State of California who were working at CSH at the time of the alleged events. Therefore, Defendants are state officials, and Plaintiff's suit seeking damages against them in their official capacities is barred by the Eleventh Amendment.

**4. First Amendment**

"In the civil commitment setting, a patient's liberty interests are balanced against the relevant state interests to determine whether the state has violated the patient's constitutional rights. . . . Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. Similarly, First Amendment challenges of [] policies must be analyzed in terms of the legitimate policies and goals of [] treatment. . . ." Spicier v. Richards 2007 WL 4561101 (W.D.Wash. Dec 21, 2007) (NO. C07-5109FDB) citing Youngberg v. Romeo, 457 U.S. 307, 318 (1982); Pell v. Procunier, 417 U.S. 817 (1974).

///

Defendants argue that Plaintiff has not alleged sufficient facts in support of his First Amendment claim or alleged any facts regarding the personal involvement of either defendant in this cause of action.

Plaintiff argues that Defendants, both supervisors, cannot say that they were not direct participants in the preparation, approval, and submission of the § 4350 regulation, and therefore Plaintiff has established an actual connection as required by the court in Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell, 436 U.S. 658. Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). The Supreme Court recently emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

In this action, Plaintiff has not alleged facts demonstrating that either Defendant *personally* acted to violate his rights under the First Amendment. Plaintiff simply complains that "[T]he Defendants, each of them, have deprived, and intend to permanently deprive the plaintiff of his

personal computer which serves as an important tool for personal expression." (Cmp at 6:20-23.) However, Plaintiff fails to link either Defendant with *personal* affirmative acts or omissions, causing deprivation of his rights. Plaintiff fails to offer little more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Therefore, Plaintiff fails to state a claim against any defendant for violation of his rights under the First Amendment.

**5. Fifth Amendment Takings Clause**

Defendants argue that Plaintiff fails to state a claim under the Fifth Amendment Takings Clause because Plaintiff has not shown that his laptop computer was taken for a public purpose.

Plaintiff argues that Defendants intend to blatantly violate the Takings Clause by taking Plaintiff's laptop computer without any compensation for the work product contained on the hard drive. Plaintiff asserts that the Takings Clause applies in this case, whether pre- or post-taking, because the intent of the government is sufficiently clear.

The Takings Clause of the Fifth Amendment "limits the government's ability to confiscate property without paying for it," and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal quotations and citation omitted).

Plaintiff's laptop computer has not been confiscated by Defendants for a public purpose, and therefore Plaintiff's Takings claim fails as a matter of law. See Kelo v. City of New London, Connecticut, 545 U.S. 469, 477-80, 125 S.Ct. 2655, 2661-663 (2005).

**6. Breach of Contract**

Plaintiff argues that by implementing the emergency regulation, Defendants have breached the contract they established with Plaintiff when they implemented AD-654. Plaintiff contends that by his signature, he agreed to modifications to his computer, and such obligation requires Plaintiff to adhere to the provisions of AD-654 and also requires Defendants to abide by the provisions which allow him to possess his laptop computer.

Plaintiff's breach of contract claim arises under state law. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Sweaney, 119 F.3d at 1391.

However, pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). If Plaintiff alleges a cognizable § 1983 claim, the federal court could exercise pendant jurisdiction over his state claims if these were properly pleaded.

**7. Fourteenth Amendment Due Process**

Defendants argue that Plaintiff's due process claim fails because Plaintiff has not established that he has a legally protected life, liberty, or property interest in the possession of his laptop computer. Defendants maintain that under Lewis v. Casey, 518 U.S. 343 (1996), prisoners do not have a constitutional right to memory typewriters, and there is no distinction between the typewriters in Lewis and the laptop computers in the present case. Defendants also argue that any "deprivation" claimed by Plaintiff is permissible if reasonably related to a legitimate penological interest, and that it has not been clearly established how much more expansive the rights of a civilly detained person are than those of a criminally detained person. Defendants also argue that the mere fact that §4350 was passed does not even remotely implicate Plaintiff's due process rights.

Plaintiff argues that when Defendants implemented AD-654, they established a concrete property right for Plaintiff. Plaintiff argues that Lewis is inapplicable because this case does not concern the implementation by the state of a policy to permit memory typewriters of a certain memory capacity. Plaintiff argues that civil detainees are entitled to the "least restrictive alternative." Plaintiff contends that his issues are not analagous to those of a prisoner, and he is not subject to the "legitimate penological interest" described in Turner v. Safely, 482 U.S. 78 (1987).

It is true that "[C]ivil detainees retain greater liberty protections than individuals detained under criminal process, and pre-adjudication detainees retain greater liberty protections than convicted ones . . . ." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). Treatment is presumptively punitive when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his criminal counterparts, and when a pre-adjudication civil

detainee is detained under conditions more restrictive than a post-adjudication civil detainee would face. Id. at 932-33.

"The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility. See, e.g. Youngberg, 457 U.S. at 319-22. In weighing those interests, it cannot be ignored that, unlike the plaintiff in Youngberg who was civilly committed because of mental infirmities, Sexually Violent Predators ("SVPs") have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others.

While the Fifth and Fourteenth Amendments prohibit a state from depriving "any person of life, liberty, or property without due process of law," it is well settled that only a limited range of interests fall within this provision. A due process claim is cognizable only if there is a recognized liberty or property interest at issue. Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985). Liberty and property interests protected by the Fifth and Fourteenth Amendments may arise from only two sources, the Due Process Clause itself and the laws of the states. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Wolff v. McDonell, 418 U.S. 539, 556-558 (1974). The first step in examining a procedural due process question is to determine whether there is a protected interest at issue. If there is no protected interest, then the procedural protections of the Due Process Clause do not attach. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Olim v. Wakinekona, 461 U.S. 238, 250 (1983).

It is beyond dispute that SVPs have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974.) While an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533.

Because Plaintiff's laptop computer has not been taken from him, he has not been deprived of a protected interest. Therefore, Plaintiff's due process claim fails.

**8. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 129 S.Ct. 808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); McSherry v. City of Long Beach, 560 F.3d 1125, 1129-30 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); McSherry, 560 F.3d at 1130.

Based on the foregoing analysis, the Court finds that Plaintiff's complaint fails to state any claim against Defendants for violation of Plaintiff's constitutional rights. Therefore, the issue of qualified immunity shall not be considered.

## V. CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff's complaint fails to state any claims upon which relief may be granted under section 1983 against any of the defendants. Moreover, because Plaintiff lacks standing to contest the regulation at issue, and this lawsuit is not ripe for adjudication, the Court finds that no relief could be granted under any set of facts that could be proved consistent with

the allegations. The deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion to dismiss, filed on April 16, 2010, be GRANTED, and that this action be dismissed in its entirety, with prejudice, for failure to state a claim.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)©. The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: July 21, 2010**

/s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE